## Case No. 16,873.

### VAN RENSSELLAER v. KELLY.

[2 Hask. 87.] [1]

Circuit Court, D. Maine. Sept., 1876.

JUDGMENT—RELEASE PROCURED BY FALSE REPRESENTATIONS—REVIVAL—LACHES.

1. The release of a judgment procured by false representations of the debtor's interest in real estate may be avoided and the judgment may be revived upon the discovery of the fraud, and the exercise of reasonable diligence to discover it and to revive the judgment, if the amount received in satisfaction of it be tendered back to the debtor.

2. Laches will not be imputed to the judgment creditor for not knowing the contents of papers showing the fraud and on file in the probate office, in the estate of the person who fraudulently concealed the title; nor from hearing rumors touching the actual ownership of the property, when, upon inquiry of both parties to the fraud, no information was obtained and the records of deeds gave none; nor from the delay of nearly a year after the fraud was discovered in making the tender to the debtor's executor; nor from a further delay of nearly eight months in bringing suit.

Debt [by Stephen Van Rensselaer, executor of Charles A. Heckscher, against Benj. Kelly, Jr., executor of Benjamin Kelly] on a judgment, submitted to the court without a jury. Plea, release of the judgment. Replication, release obtained by fraud. Issue taken.

Hanno W. Gage and Sewall C. Strout, for plaintiff.

Bion Bradbury, for defendant.

FOX, District Judge. This is an action of debt on a judgment recovered in 1858, by the plaintiff's testator against Benjamin Kelly and others, in the supreme judicial court of Maine. On the 5th of October,

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

1867, in consideration of $173.86, twenty per cent of the judgment, paid by Kelly to Joseph Williamson as attorney for the plaintiff's testator, this judgment was discharged by a formal release under seal. The plaintiff now seeks to revive this judgment, because the release discharging it was obtained by fraud and fraudulent representations made by Kelly to Williamson. Mr. Williamson testifies that Kelly told him that he had no property; that his real estate had been forfeited to Robert White; that White had a warranty deed of it and that he, Kelly, had no interest in it; that trusting to these representations he was induced to accept the amount paid by Kelly, and to execute the release that he had given. There is nothing to contradict the statements of Mr. Williamson, and the court therefore finds that such representations were made by Kelly, and that Williamson relied and acted upon them. Mr. Williamson, before giving the release, inquired of White as to the property, and he says that White corroborated Kelly's representations and claimed that his, White's, title, was absolute, thus by his falsehood assisting Kelly in deceiving his creditors, clearly indicating the fraudulent designs of both parties in respect to Kelly's real estate. It is argued that this was an old transaction of long standing; that White had held an absolute title to the property since 1857; and that Kelly did not believe that after so long a time he could enforce obligations for a reconveyance of it, given by White at that time. The court is unable to adopt this conclusion. It is said that large sums were paid by Kelly's family on account of the property, which went to discharge White's claims and enable Kelly to obtain a reconveyance; but the evidence does not support any such position.

Another ground of defense is, that the plaintiff has been guilty of laches in not sooner giving notice to the defendant or his testator that he had discovered that a fraud had been practiced upon him in obtaining the release of the judgment. It is said that in March, 1868, the probate records of Waldo county disclosed Kelly's claim to this property, and that a deed of release was then given by White to Kelly, all of which Mr. Williamson could have ascertained upon inquiry, and that facts were brought to his knowledge at that time which should have put him on inquiry and investigation, and that he is therefore chargeable with all the knowledge and information he could have acquired if the inquiry had been made.

Upon this branch of the case, Mr. Williamson's testimony is, that about a year after the release had been given he heard rumors that Kelly owned the property and that it was not forfeited, but that he had no actual knowledge about it; that he then wrote Kelly a letter respecting it, but got no reply; that he inquired of J. P. White, the executor of Robert White, but he was reticent and

would give no information about it; that he examined the records of deeds from time to time, but there was no record of a conveyance of the property; that he could learn nothing further about the property until after Kelly's death in 1873, when by accident, on examining the inventory of his estate, he found this real estate included as a part of Kelly's property. The court is of opinion that upon these facts there was no failure or neglect on the part of Williamson. Acting upon the rumor that Kelly had some interest in the property, he applied to both White and Kelly, but without success. He examined the records of deeds, but could learn nothing there of any transfer; and it was hardly to be expected that in March, the probate records respecting White's estate would disclose a petition of Kelly's so contradictory of his positive statements to Williamson made in October previous. No authority is here cited to establish the point, that a stranger to White's estate is to be held chargeable with a knowledge of all that the probate records may disclose in relation to the property of other parties. Williamson states that some time after the inventory of Kelly's estate was returned to the probate court, Sept. 5, 1873, he examined it, and then made further inquiries, and for the first time then ascertained about the reconveyance of the property by White's administrator to Kelly. On the 11th of August, 1874, he tendered to the executor the amount paid on the execution with interest, and notified him that he claimed to avoid the release on the ground of fraud, and to collect the full amount of the judgment. On the 7th of April, 1875, the present suit was commenced.

Under the laws of Maine an executor cannot be required to defend such a suit, commenced within one year after his appointment; and for this reason the delay in instituting the present suit was justifiable; and while it would have been prudent to have made a tender and have given notice of the intention of the party to avoid the release at an earlier moment than was done, the court does not feel justified in denying the party a remedy for the fraud thus practiced upon him. No injury has resulted to the estate of Kelly from the delay, so far as appears in the case. Judgment for plaintiff.